FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 29 2019

JAMES N. HATTEN, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **INTERNATIONAL RISK RESOURCES, LLC.** | |
| Plaintiff, | |
| vs. | Civil Action No. |
| **BLUESTONE INDUSTRIES, INC.** | 1 19-CV-2441 |
| Defendants. | |

**Motion to Confirm Arbitration Award
and Incorporated Memorandum of Law**

Based upon the Final Award of the Arbitrator reflected in the attached documents, Plaintiff/Claimant International Risk Resources, LLC, by and through the undersigned managing member, requests pursuant to 9 U.S.C. § 9 that the Court confirm the arbitration award as a judgment and enter judgment against Defendants/Respondents in the amount of $85,067.04. This motion should be granted, and the award confirmed into a judgment because the arbitration was in all respects proper and the award is final and binding.

1

## 1. Background

On or about December 31, 2007, Plaintiff and Defendants entered into an Alternative Dispute Resolution Agreement which provided that the parties would settle any dispute arising out of the Agreement by arbitration according to the rules of the American Arbitration Association. *See* Exhibit 1, attached hereto.

On or about February 21, 2018, Plaintiff filed an arbitration claim with the American Arbitration Association against Defendants seeking damages for unpaid invoices and contractual violations. The arbitration was assigned to Arbitrator George C. Reid without objection of the Parties. Bluestone agreed to the appointment of a single arbitrator.

The Arbitrator initially reached a decision as to Plaintiff's unpaid invoice damages and issued an award in favor of the Claimants in the amount of $70,503.36, plus $500.00 as an equal share of the arbitrator's costs. This award was subsequently modified by a final award dated June 1, 2018, to the amount of $80,224.09 plus $500.00 as an equal share of the arbitrator's costs. The arbitrator's award included interest at the rate provided by Georgia law on judgements, commencing on the 31st day of this Award.

Plaintiff later requested and the Arbitrator granted a modification of the award was due to clerical/typographical/mathematical errors.

## 2. Arbitrator's Final Award

On June 1, 2018, the arbitrator, on DISPOSITION OF APPLICATION FOR MODIFICATION OF AWARD, issued a Final Award in the amount of $80,224.09 plus $500.00 as an equal share of the arbitrator's costs.

Arbitrator reports modification of the amount was due to clerical/ typographical/mathematical errors. *See* Exhibit 2, attached hereto.

Plaintiff now moves to confirm this award, with Awarded interest in accordance with Georgia law commencing on the 31st day after the Award. The interest, beginning on July 2, 2018 at the interest rate shown on Federal Reserves Daily Selected Interest Rate Schedule H.15 plus 3%. The H.15 latest rate showing for May 23, 2019 is 2.38%. Which makes the interest due on this award 5.38% per annum for the $80,724.09, therefore the full award is now $80,724.09 plus $4,342.95 in interest due up to July 2, 2019, for a total award of $85,067.04.

Plaintiff respectfully requests an order confirming the arbitration award into a judgment the amount of $85,067.04 for Plaintiff against Defendants Bluestone Industries, Inc. (Bluestone)

## 3. Authority of this Court to Confirm the Arbitrator's Final Award and Enter Judgment

The Federal Arbitration Act, 9 U.S.C. § 9, provides that "within one year after

3

the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." Accordingly, the Court has the obligation to confirm Claimant's arbitration award into a judgment. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652 (1996) (stating the purpose of the Federal Arbitration Act is to ensure that private agreements to arbitration are enforced). The standard of review of an arbitrator's decision by the court is very narrow.

The scope of review is limited and the court will not examine the validity of the decision except to the extent that the award exceeds the agreement of the parties. *See Burchell v. Marsh*, 58 U.S. 344, 349 (1854) (stating the appropriate scope of judicial review is whether the award is the honest decision of the arbitrator, made within the scope of the arbitrator's power, and that a court will not otherwise set aside an award for error, either in law or fact).

There are no grounds for vacating, modifying, or correcting an arbitration award enumerated in 9 U.S.C. § 10-11 which exist, and Defendants have not made any motion to vacate, modify, or correct the award.

This court's venue is correct based on 28 U.S. Code § 1332. Diversity of citizenship; amount in controversy; costs

The following requirements should be sufficient to confirm venue is correct;

The arbitration Award is excess of the $75,000.00 requirement,

The plaintiff and defendant are citizens of different states.

The Arbitration was conducted within this Court's jurisdiction.

The Certificate of Interested Persons and Corporate Disclosure Statement is attached as Exhibit 3 hereto.

## 4. Conclusion

Plaintiff respectfully requests an order confirming an arbitration award into a judgment the amount of $85,067.04 for Plaintiff against Defendants Bluestone Industries, Inc.

This 28th day of May 2019,

                        Respectfully submitted,

                        INTERNATIONAL RISK
                        RESOURCES, LLC.

                        *[signature]*

                        **Randy J. Savage**
                        **Pro Se for the Plaintiffs**
                        **2014 Beaver Ruin Rd. Ste 202**
                        **Norcross, GA 30071**
                        **Tel: 678-736-2320**
                        **Email:**
                        RSavage@IRResources.com

## Certificate of Compliance

Pursuant to LR 7.1 NDGa, the undersigned counsel certifies that that the foregoing motion was prepared using 14 point, Times New Roman Font, one of the point and font selections approved by the Court in LR 5.1 NDGa.

                        *[signature]*
                        Randy J. Savage
                        Pro Se for the Plaintiffs

# INTERNATIONAL RISK RESOURCES, LTD.
### Risk and Data Management

## CLAIMS SERVICE AGREEMENT

**THIS CLAIMS SERVICE AGREEMENT** ("Agreement") is by and between Bluestone Industries, Inc. with principal offices located at P. O. Box 1085, Beckley, WV 25801 (the "Company"), and International Risk Resources Ltd., with Principal offices located at 115 Perimeter Center Place, Suite 311, Atlanta, GA 30346 ("IRR").

WHEREAS, IRR is in the business of providing claims adjusting, administrative and data services, and

WHEREAS, the Company desires to purchase the services of IRR and IRR desires to provide such services to the Company in connection with Company's Self Insured Retention program (the "Program").

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, the parties agree as follows:

## I. EFFECTIVE DATE/TERM
1.1 This Agreement shall be effective as of December 31, 2007, and shall continue in full force and effect until termination in accordance with Article XII.

## II. CLAIMS ADJUSTING AUTHORITY AND RESPONSIBILITIES OF SERVICE COMPANY
2.1 Claims Adjusting. Subject to the terms and conditions of this Agreement, IRR shall have the authority and responsibility to provide claims adjusting, administration and data services (the "Services") to conclusion for the Company in connection with claims or losses relating to occurrences under policies of insurance issued by the Company's insurer or any alternative risk retention plan pursuant to the Program.

2.2 Services. In connection with its authority and responsibilities under this Agreement, IRR shall:
   (a) Receive and examine, on behalf of the Company, all claims reported to it and initiate procedures for the proper servicing of each claim; and engage the services of persons or firms outside its organization for work in connection with management of claims and incur Allocated Loss Adjustment Expense defined in Section 5.4.

   (b) Investigate and adjust, settle or deny all claims in accordance with applicable insurance laws and subject to the ultimate authority of the Company as provided in Article III, below.

   (c) Establish and reserve a claim file for each claim for which there is injury, anticipated liability and/or a formal claim has been made; code such claim in accordance with data requirements as may be mutually agreed upon.

   (d) Maintain an accurate and complete claim file on each reported claim, which shall be available during normal business hours for inspection by the

Company, its representatives or by appropriate regulatory authorities. IRR shall maintain and store closed claim files for no less than one year after the expiration of the statute of limitations applicable to each claim file.

(e) In connection with the performance of the Services, provide trained, competent, and where required, licensed claims adjusters and perform the Services in a manner commensurate with professional standards, in good faith, and in accordance with all applicable laws and regulations.

(f) Identify and notify the Company of subrogation rights, which may arise upon payment of claims. At the direction of the Company, IRR shall retain attorneys to pursue and supervise the pursuit of the Company's subrogation rights through litigation or otherwise.

(g) Perform all administrative and clerical work in connection with the adjustment and settlement of claims including the preparation of checks and/or drafts drawn on the Loss Payment Account established pursuant to Article IV; and

(h) Respond immediately to any inquiry, complaint or request received from an Insurance Department, other Regulatory Agency, client, claimant, agent, broker, or other interested party relating to the Services; a copy of both the original inquiry and IRR's response shall be provided in a timely manner to Company.

## III.   CLAIM SETTLEMENT AUTHORITY

3.1.  Authority Limit. Unless otherwise advised by the Company or in cases of suspected fraud, IRR shall have authority and control in all matters, pertaining to the handling of claims submitted to IRR under this Agreement, except claims which involve or which are expected to involve aggregate expenditures (of loss and Allocated Loss Adjustment Expenses) in excess of the "Authority Limit" which is equal to fifty percent (50%) of the self-insured retention amount (the "SIR Amount") per claim as required by the Company's insurer(s). The SIR Amount per claim required by the Company's insurer(s) is equal to Five Hundred Thousand Dollars ($500,000.00).

3.2  Serious Loss Report. For each claim in excess of the Authority Limit, Company agrees that IRR shall provide Company's insurer(s) with a Narrative Serious Loss Report and a copy of the claim file. The Narrative Serious Loss Report shall be in a mutually agreeable form, such agreement not to be unreasonably withheld by either party. Additional Narrative Serious Loss Reports shall be submitted whenever facts dictate the need, or each thirty (30) days whichever is shorter, unless otherwise agreed by the Company's insurer(s). Unless otherwise directed in writing by the Company's insurer(s), the Company agrees IRR shall continue to handle a claim that exceeds the Authority Limit, but IRR shall not settle such claim without first advising the Company's insurer(s).

3.3  SIR Limit. IRR shall not make payments on a claim from the Loss Payment Account, described in Section 4.1, in excess of the SIR Amount without the specific authority of the Company.

## IV.   DRAFT AUTHORITY AND ISSUANCE

4.1  Loss Payment Account. IRR shall have authority to draw upon the bank account (the "Loss Payment Account") it establishes for payment of Company's claims and for reimbursement of the Allocated Loss Adjustment Expenses.  Upon

request the Company shall initially fund within five (5) calendar days the Loss Payment Account in the amount of anticipated indemnity and expense payments as requested by IRR. ("Initial Funding"). Within five (5) calendar days of Company's receipt of the monthly loss reports as set forth in Section 6.1, Company shall replenish the Loss Payment Account in an amount equal to the greater of the Initial Funding, or two (2) months anticipated losses and Allocated Loss Adjustment Expenses for pending claims.

4.2 <u>Obligation to Fund Loss Payment Account.</u> It is expressly agreed that IRR shall not be required to advance its own funds to pay any of the Company's obligations, including without limitation, loss payments or Allocated Loss Adjustment Expenses. Company agrees to indemnify IRR for any losses and damages resulting from the Company's failure to promptly and adequately fund its obligations. Any bank charges resulting from inadequate funding, including, but not limited to stop payment charges, overdraft fees and claims by third parties shall be the obligation of the Company and the Company agrees to defend and hold harmless IRR from any such claims or demands.

4.3 <u>Changes to Loss Payment Account.</u> The Company may review the adequacy of the Loss Payment Account at any time and shall increase the amount in the Loss Payment Account as necessary to comply with Section 4.1. Upon the request of the Company, IRR shall promptly remit to the Company funds in the Loss Payment Account that are in excess of the amounts required by Section 4.1.

4.4 <u>Notice to Company's Insurer(s).</u> Loss payments and/or reserves in excess of fifty percent (50%) of the SIR Amount shall require notice to the Company's insurer(s).

4.5 <u>Accounting.</u> All checks shall be accounted for by IRR, as on-hand, issued, voided, or cancelled. IRR shall provide a monthly accounting to the Company within fifteen (15) days after the end of the month for which the accounting is given. IRR shall have the responsibility for balancing the Loss Payment Account.

V. **COMPENSATION/REIMBURSEMENT**

5.1 <u>Fees for Services.</u> The Company agrees to pay IRR at the Claims Administration rate set forth in attached Exhibit A, for all time IRR expends in assisting the Company with performance of Company's obligations under the Program, including but not limited to collection of required funds and execution of this Agreement. In the event any amount due IRR under this Agreement is not paid by the due date, the amount remaining unpaid shall bear interest at the rate of one and one-half percent per month or the highest amount allowed by law, whichever is lower, until paid. The Company agrees to pay all costs and expenses, including attorney's fees, incurred in connection with IRR's enforcement of this Agreement.

5.2 <u>Claims Administration Rate Escalator.</u> Annually on the anniversary date of this Agreement, the rates set forth in Exhibit A shall be increased by the Consumer Price Index for all Urban Consumers for the U.S. City Average for All Items for the most recent twelve (12)-month period.

5.3 <u>Payment of Expenses.</u> The Company shall subsidize loss payments and Allocated Loss Adjustment Expenses (as provided in Section 4.1 and Exhibit A) reported to the Company in the monthly loss reports required by Article VI, except as provided herein.

5.4    <u>Expenses.</u> "Allocated Loss Adjustment Expenses" shall be defined as and include all out-of-pocket expense items such as field adjusting expenses, fees for attorneys retained on behalf of the Company, expert witness fees, fees for independent medical examinations, witnesses' travel expenses, direct travel cost, extraordinary travel expense incurred by IRR at the request of the Company, court reporters' fees, transcript fees, the cost of obtaining public records, bank charges, long distance, expedited mail and other similar fees, costs or expenses associated with the investigation, negotiation, settlement or defense of any subrogation claim or as required for investigation and pursuit of subrogation on behalf of the Company. Allocated Loss Adjustment Expense shall include pre-judgment interest and other interest penalties. Allocated Loss Adjustment Expense shall not include IRR invoices, the salaries of IRR's employees, its overhead, or other normal or ordinary costs incurred in connection with the Services provided under this Agreement or its business as a whole.

## VI. REPORTING REQUIREMENTS

6.1    <u>Monthly Loss Reports.</u> Within ten (10) days after the last day of the month, IRR shall provide a monthly loss run report to the Company by hard copy or in an acceptable data format sent via email, or other agreed format.

6.2    <u>Content of Reports.</u> IRR shall provide to Company monthly documentation identifying all loss payments and Allocated Loss Adjustment Expenses. This documentation shall include records of all loss payment checks and Allocated Loss Adjustment Expense checks, refunds, recoveries and voided checks.

## VII. AUDIT RIGHTS

7.1    <u>Company's Audit Rights.</u> In order to assure itself of IRR's compliance with the terms of this Agreement, upon reasonable notice to IRR, Company shall have the right to audit, at its own expense, the books and records of IRR either with its own employees or independent outside auditors during normal business hours.

7.2    <u>Access to Files.</u> IRR shall provide Company with a written or electronic copy of its claim files upon payment of all amounts owed IRR under this Agreement. IRR, its employees, agents and affiliated companies shall have access to Company's claim files at all times. IRR, its employees, agents and affiliated companies shall not disclose Company's claim files to any third person, without the express, written consent of the Company.

## VIII. REPRESENTATIONS AND WARRANTIES

8.1    <u>Company's Warranty.</u> Company warrants and represents that the transactions contemplated in this Agreement are (a) within the Company's corporate powers; (b) duly authorized by all necessary corporate action of Company; and (c) legal, valid and binding obligations of Company, enforceable against it in accordance with their terms.

8.2    <u>IRR's Warranty.</u> IRR warrants and represents that the transactions and activities contemplated in this Agreement are (a) within IRR's corporate powers; (b) duly authorized by all necessary corporate action of IRR; and (c) legal, valid and binding obligations of IRR, enforceable against it in accordance with their terms.

## IX. ARBITRATION

9.1    <u>Binding Arbitration.</u> The parties agree that any and all claims, disputes and controversies by or between the parties arising from or related to the interpretation or performance of this Agreement, including its formation or

validity, or any transaction under this Agreement, whether arising before or after termination, shall be submitted to binding arbitration governed by the provisions of the Federal Arbitration Act, 9 U.S.C. 1, et seq., conducted by and pursuant to the commercial rules of the American Arbitration Association, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The parties shall jointly share the expense of the arbitrators.

9.2 <u>Selection of Arbitrators.</u> Upon written request of any party, each party shall choose an arbitrator and the two chosen shall select a third arbitrator. If either party refuses or neglects to appoint an arbitrator within 30 days after receipt of the written request for arbitration, the requesting party may appoint a second arbitrator. If the two arbitrators fail to agree on the selection of a third arbitrator within 30 days of their appointment, each of them shall name three individuals, of whom the other shall decline two, and the decision shall be made by the American Arbitration Association. Each party shall submit its case to the arbitrators within 30 days of the appointment of the third arbitrator.

X. **INDEMNITY AND INSURANCE**

10.1 <u>Indemnification by IRR.</u> IRR agrees to indemnify, defend and hold harmless the Company, its officers, employees, affiliated companies and parent company from and against any and all liability, loss, damage, expense, costs and attorney's fees, incurred in connection with claims or liability arising from or caused by the negligent, dishonest, malicious, fraudulent or criminal act or omission of IRR, its officers, agents or employees.

10.2 <u>Indemnification by the Company.</u> The Company agrees to indemnify, defend and hold harmless IRR, its officers, employees, affiliated companies and parent company, from and against any and all liability, loss, damage, expense, costs and attorney's fees, incurred in connection with claims or liability arising from or caused by the negligent, dishonest, malicious, fraudulent or criminal act or omission of the Company; its officers, agents or employees.

10.3 <u>Indirect Damages.</u> In no event shall either party be liable to the other party for special, punitive, indirect, extra contractual or consequential damages arising out of this Agreement for any cause whatsoever, whether or not such party has been advised or could have foreseen the possibility of such damages. IRR's liability to Company for any damages or losses, including the obligation to indemnify, shall not exceed the amount of fees received by IRR pursuant to Section 5.1.

10.4 <u>Insurance for IRR.</u> During the term of this Agreement, IRR shall maintain Errors and Omissions Liability Insurance in an amount not less than $1,000,000 for any one event or occurrence and in an amount not less than $1,000,000 in the aggregate.

10.5 <u>General Insurance.</u> Each party shall maintain during the term of this Agreement, the following forms of insurance, Comprehensive General Liability Insurance with limits of not less than $1,000,000 including contractual liability.

XI. **DEFAULT**

11.1 <u>Events of Default.</u> The following are events of default under this Agreement: (a) failure to pay amount owed within the time provided in this Agreement, or (b) any material breach of a term of this Agreement that is not cured by breaching party within ten (10) days after receipt of notice of such breach or if the

breach is of the type not curable within such period, and the breaching party shall not have diligently commenced taking steps necessary to cure such breach.

## XII. TERMINATION

**12.1 Termination.** This Agreement may be terminated by Company or IRR as follows: (a) upon ninety (90) days prior written notice without cause; (b) upon ten (10) days prior written notice in the event of a default in this Agreement by the other party; (c) immediately upon written notice in the event of fraud, abandonment, gross or willful misconduct, insolvency, filing a petition in bankruptcy, or lack of legal capacity to act by the other party.

**12.2 Survival.** Notwithstanding termination of this Agreement, the provisions of this Agreement shall continue to apply as necessary for the parties to satisfy their obligations and liabilities incurred prior to termination, including the duty to indemnify for liability, damages and losses, the basis of which arose prior to termination.

## XIII. GENERAL PROVISIONS

**13.1 Headings.** The subject headings in this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of this Agreement.

**13.2 Entire Agreement.** When fully executed, this Agreement and Exhibit A, constitutes the entire understanding of the parties related to the subject matter of this Agreement, and supersedes any prior agreement or understanding. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the parties.

**13.3 Waiver.** The failure of a party to insist upon the strict performance of the terms and conditions of this Agreement shall not constitute a waiver of that party's right to enforce the same in the event of a continuing or subsequent default on the part of the other party.

**13.4 Independent Contractor.** IRR shall be an independent contractor under this Agreement and nothing in this Agreement shall be construed as creating an employer/employee relationship, partnership, joint venture, or other business group relationship.

**13.5 Assignment.** Neither party shall assign, sell, transfer or otherwise convey, pledge or encumber any of its rights, obligations or interests under this Agreement without the prior written consent of the other party with such consent not being unreasonably withheld. Except as otherwise provided herein, this Agreement shall inure to the benefit of, and be binding upon, the successors and assigns, of the parties.

**13.6 Governing Law.** The Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. In the event that any part of this Agreement shall be declared void or unenforceable by any court having jurisdiction, such imperfection shall not affect the validity or enforceability of the remainder of this Agreement unless the result would be manifestly unconscionable.

13.7 Notice. Any notice required under this Agreement shall be in writing, personally delivered or sent by certified mail, postage prepaid, to the other party at the address listed below or any subsequent address designated from time to time:

If to Company:

Bluestone Industries, Inc.
P. O. Box 1085
Beckley, WV 25801
Attention:   Steve Ball
Telephone:  304-252-8528
E-Mail:      steve@bluestoneindustries.com

If to IRR:

International Risk Resources, Ltd.
115 Perimeter Center Place NE, Suite 311
Atlanta, Georgia 30346
Attention:   Richard E. Gray
Telephone:  678-736-2317
Fax:         678-736-2321

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed in duplicate by their authorized representatives on the dates indicated below.

Company:                                              IRR:

**Bluestone Industries, Inc.**
(As stated in 1st paragraph of this Agreement)        **International Risk Resources, Ltd.**

BY: _[signature]_                                     BY: _Fran Lowry_
TITLE: EVP                                            TITLE: VP
DATE: 7-25-08                                         DATE: 7-28-08

## Exhibit A
## RATE SCHEDULE

This Exhibit A, effective December 31, 2007, is attached to and made a part of the Claims Service Agreement (the "Agreement") between Bluestone Industries, Inc. (the "Company") and International Risk Resources, Ltd. ("IRR"), covering the Self-Insurance Retention program.

IRR assists its clients and offers fee structures that allow IRR to achieve its service standards at competitive and cost efficient rates.

| Bluestone Industries, Inc.   $500,000.00 | SIR PROGRAM |
|---|---|

**Claims Administration:**

| | |
|---|---|
| Time and Expense    Flat Rate | $75.00 per hour |
| Document Imaging, archiving and storage | $44.00 per hour |

Plus:
- Allocated Loss Adjustment Expenses, bank charges, phone and expedited mail.
- Any direct cost travel to mediations or arbitrations.
- Standard 20% Office Expense Charge.
- All fees are adjusted using the annual CPI as provided in the Agreement.

**Data Administration:**

| | |
|---|---|
| > Any licensing fees (Optional for on line services) | $ See Below |
| > Program Registration Fee | $ 0 |
|     > Loss Runs and Check Reconciliation | Included |
|     > Imaged Documents | Included |
| Reporting Purposes Only (RPO) | $75.00 |

**Company:**
Bluestone Industries, Inc. (As referred to in paragraph one of this Exhibit)

BY: _[signature]_

TITLE: _EVP_

DATE: _7-25-08_

**Optional Services:**

**Risk Control Services**

| | |
|---|---|
| Standard Inspection and Report | $75.00 Per Hour |
| Expert Engineer | $125.00 Per Hour |

Plus Expenses, including without limitation direct travel cost, if required.

| Microsoft® Terminal Server and Claims Source License SM | LIVE WEB ACCESS |
|---|---|
| Annual License Fee | $ 490.00 Per User |
| On-site Training/Stewardship Meetings, Plus expenses | $980.00 Per Day |

**AMERICAN ARBITRATION ASSOCIATION** | **INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Case Number: 01-18-0000-1938

International Risk Resources, LLC, Claimant
-vs-
Bluestone Industries, Inc., Respondent

### DISPOSITION OF APPLICATION FOR MODIFICATION OF AWARD

I, George C. Reid, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by and between the above-named Parties, said with agreement being effective December 31, 2007, and having been duly sworn, and the oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by Claimant, International Risk Resources, LLC (hereinafter "Claimant"), and Respondent, Bluestone Industries, Inc. (hereinafter "Respondent") having failed to submit documents after due notice by mail in accordance with the Rules, and having previously rendered an Award dated May 21, 2018, and Claimant having filed an application for Modification dated May 30, 2018, and Respondent having failed to respond to said application after due notice, do hereby, DECIDE, as follows:

This matter was conducted in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association. Rule R-50 of the Rules allows for modification of the award only for clerical, typographical, or computational errors. The Rules do not allow the arbitrator to re-determine the merits of any claim already decided.

I hereby CORRECT the following clerical/typographical/mathematical errors:

The last sentence of the third paragraph of the Award is deleted and in lieu thereof the following sentence is inserted: "The unpaid invoices as of the date of this arbitration totaled $80,224.09"

The following sentence thereafter reading "Respondent shall pay Claimant for services rendered, the sum of Seventy Thousand Five Hundred Three Dollars and Thirty-Six cents ($70,503.36")" is deleted and in lieu thereof the following sentence is inserted: "Respondent shall pay Claimant for services rendered the sum of Eighty Thousand Two Hundred Twenty-Four Dollars and Nine Cents ($80,224.09).

In all other respects, my Award dated May 21, 2018, is reaffirmed and remains in full force and effect.

6/1/18
Date

George C. Reid, Arbitrator



AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

In the Matter of the Arbitration between:                           Case Number: 01-18-0000-1938

**International Risk Resources, LLC**   (Claimant)

-vs-

**Bluestone Industries, Inc.**          (Respondent)

### AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the parties, and effective December 31, 2007, and having been duly sworn and the oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by Claimant, International Risk Resources, Ltd. (hereinafter "Claimant") and Respondent, Bluestone Industries, Inc. (hereinafter "Respondent") having failed to submit documents after due notice by mail in accordance with the Rules, hereby AWARD as follows:

Claimant is in the business, among other things, of providing insurance claims adjustment services. Pursuant to a written contract effective December 31, 2007, Respondent retained Claimant to provide such services including the investigation, adjustment, and settlement of various insurance claims. The agreement between the parties set forth a detailed fee schedule which established the compensation due Claimant for the required services.

The evidence provided by Claimant conclusively demonstrates that Claimant undertook, and in fact performed, a wide variety of claims adjustment services for Respondent. This work extended over many years but commencing in mid-2016 Respondent became delinquent in making payment to Claimant. These delinquencies continued throughout the remainder of 2016 and through the end of 2017. The unpaid invoices as of the date of this arbitration totaled $70,503.36.

Claimant filed this proceeding to recover the amount due under its agreement with Respondent. Claimant presented detailed documentation of each invoice in issue and the date it was due for payment. No evidence was submitted by Respondent to contest any of Claimant's allegations.

Accordingly, I AWARD as follows:

Claimant is the prevailing party in this matter.

Respondent shall pay Claimant for services rendered, the sum of Seventy Thousand Five Hundred Three Dollars and Thirty-Six Cents ($70,503.36).

Commencing on the 31st day after the date of this Award, the amount awarded herein shall bear interest at the rate provided by Georgia law on judgments.

The administrative fees and expenses of the American Arbitration Association totaling Seven Hundred Fifty Dollars and Zero Cents ($750.00) shall be borne as incurred by the claimant. The compensation and expenses of the arbitrator totaling One Thousand Dollars and Zero Cents ($1,000.00) shall be borne as incurred, divided equally between the claimant and the respondent.

The above sums are to be paid on or before 30 days from the date of this Award.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

I, George C Reid, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

5/21/18
Date

George C Reid

# EXHIBIT 3

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

(1) The undersigned counsel of record for a party to this action certifies that the following is a full and complete list of all parties in this action, including any parent corporation and any publicly held corporation that owns 10% or more of the stock of a party:

    Plaintiff – International Risk Resources, LLC.

    Members:  Randy J. Savage – Managing Member
                   Justin J. Savage – Member
                   Sean J. Savage – Member

(2) The undersigned further certifies that the following is a full and complete list of all other persons, associations, firms, partnerships, or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case:

    Defendant – Bluestone Industries, Inc.

Plaintiff is without knowledge as to other persons, associations, firms, partnerships, or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case, but believes the amount of this matter would not substantially affect any of the above named persons or entities. The Service of Process is:

    CT CORPORATION SYSTEM
    1627 QUARRIER ST
    CHARLESTON, WV, 25311-2124

3-001